# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOUND VIEW INNOVATIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-660-CFC-CJB |
| | ) | |
| WALMART INC. AND VUDU, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS WALMART INC. AND VUDU, INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PATENT-ELIGIBLE SUBJECT MATTER

OF COUNSEL:

Michael Rhodes
Heidi L. Keefe
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000
hkeefe@cooley.com
mrhodes@cooley.com

Phillip E. Morton
Emily E. Terrell
COOLEY LLP
1299 Pennsylvania Ave. NW, #700
Washington, D.C. 20004-2446
(202) 842-7800
pmorton@cooley.com
eterrell@cooley.com

June 17, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jlyons@mnat.com

*Attorneys for Defendants Walmart Inc. and Vudu, Inc.*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

III.  SUMMARY OF THE ARGUMENT ................................................................ 2

IV.  STATEMENT OF FACTS ................................................................................. 3

V.  ARGUMENT ....................................................................................................... 3

    A.  Sound View is Collaterally Estopped from Asserting Claim 14 of the '062 Patent ................................................................................................................ 3

    B.  The '133, '715 and '456 Patents Are Directed to Patent Ineligible Subject Matter ................................................................................................................ 5

        1.  Legal Standards ......................................................................................... 5

            a.  Patent Eligibility is Determined Using the *Alice* Two-Step Test ............................................................................................ 5

            b.  The Court Can and Should Address § 101 on a Motion to Dismiss Without Claim Construction. ................................................ 6

        2.  The '133 Patent Claims Ineligible Subject Matter .................................... 7

            a.  The '133 Patent is Directed to the Abstract Idea of Keeping Track of Events and Saving Your Place with a Bookmark ............ 7

            b.  Nothing in the Claims of the '133 Adds An Inventive Concept ...................................................................................... 10

        3.  The '715 Patent Claims Ineligible Subject Matter .................................. 11

            a.  The '715 Patent is Directed to the Abstract Idea of Concluding a Process and Ending Communication in an Orderly Manner .................................................................... 11

            b.  Nothing in the Claims of the '715 Adds An Inventive Concept ...................................................................................... 14

        4.  The '456 Patent Claims Ineligible Subject Matter .................................. 15

            a.  The '456 Patent is Directed to the Abstract Idea of Providing a Quality of Service by Controlling Access to Resources Hierarchically ............................................................ 15

            b.  Nothing in the Claims of the '456 Adds An Inventive Concept ...................................................................................... 19

        5.  Plaintiff's Complaint Does Not Confer Patent-Eligibility ...................... 20

VI.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Accenture Global Services, GMBH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013)........................................................................ 13, 17

*Affinity Labs of Texas, LLC v. DIRECTTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)................................................................. 10, 14, 19

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)....................................................................................... passim

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed Cir. 2016)............................................................................. 9, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................... 20

*Blonder-Tongue Labs, Inc. v. Univ. of Illinois Found.*,
   402 U.S. 313 (1971)..................................................................................................... 3

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)............................................................................. 6, 11

*CardioNet, LLC v. ScottCare Corporation*,
   325 F. Supp. 3d 607 (E.D. Pa. 2018) ......................................................................... 5

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019).................................................................................... 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)................................................................. 8, 9, 13, 18

*Dyndul v. Dyndul*,
   620 F.2d 409 (3d Cir.1980)..................................................................................... 4, 5

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)............................................................................... 5, 19

*Free Speech Coalition v. Att'y Gen.*,
   677 F.3d 519 (3d Cir. 2012)..................................................................................... 4, 5

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
   No. 2018-1407, 2018 WL 6720014 (Fed. Cir. Dec. 20, 2018)................................. 20

**Page(s)**

*I/P Engine, Inc. v. AOL Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014) ........................................................................ 6

*In re TLI Commc'ns Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ..................................................................... 6, 8, 18

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) .................................................................. 8, 9, 13

*Intellectual Ventures I, LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) .................................................................. 5, 11, 12

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ...................................................................... 8, 13

*Interval Licensing v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) .................................................................... 13, 18

*IPA Techs. v. Amazon.com, Inc.*,
   307 F. Supp. 3d 356 (D. Del 2018) ...................................................................... 6

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
   458 F.3d 244 (3d Cir. 2006) .................................................................................. 4

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ................................................................................ 20

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) .......................................................................... 10

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ............................................................................ 6

*Personalized Media Commc'ns v. Amazon.com, Inc.*,
   161 F. Supp. 3d 325 (D. Del. 2015) ..................................................................... 6

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 Fed. Appx. 1017 (Fed. Cir. 2017) ............................................................... 17

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017) ....................................................................... 6, 7

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
   113 F.3d 405 (3d Cir. 1997) ................................................................................ 20

**Page(s)**

*Scooper Dooper, Inc. v. Kraftco Corp.*,
  494 F.2d 840 (3d Cir. 1974)..........................................................................3

*Search & Social Media Partners v. Facebook, Inc.*,
  346 F. Supp. 3d 626 (D. Del. 2018) ..........................................................20

*Smartflash LLC v. Apple Inc.*,
  680 Fed. App'x. 977 (Fed. Cir. 2017)........................................................17

*Sound View Innovations, LLC v. Facebook, Inc.*,
  204 F. Supp. 3d 655 (D. Del. 2016) ............................................................6

*Soverain Software LLC v. Victoria's Secret Dir. Brand Mgmt., LLC*,
  778 F.3d 1311 (Fed. Cir. 2015)....................................................................3

*Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...........................................................passim

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)......................................................................7

**Rules and Statutes**

35 U.S.C. §101 ..............................................................................passim

Fed. R. Civ. P. 12(b)(6)...............................................................2, 20

Fed. R. Civ. P. 12(c) ...............................................................................5

## I.      INTRODUCTION

Four out of the five patents[1] asserted by Plaintiff Sound View Innovations, LLC ("Sound View") claim ineligible subject matter and should be dismissed.[2]

These patents were examined and issued at least a decade before the Supreme Court's seminal *Alice* decision that resulted in greater scrutiny of patent eligibility under 35 U.S.C. Section 101.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  None of these patents can meet the two part test set out in *Alice*.  Indeed, the Court in *Sound View Innovations, LLC v. Hulu, LLC*, invalidated the only asserted claim of U.S. Patent No. 5,806,062 (the "'062 patent") on summary judgment, analogizing the claims to taking turns in a board game.  *Sound View Innovations, LLC v. Hulu, LLC*, Case No. 2:17-cv-04146-JAK, Doc. No. 451 (C.D. Cal. April 30, 2019).  (Ex. A, "SJ Order".)  That decision is binding on Sound View.  As such, the principles of collateral estoppel should apply and the '062 patent should be dismissed from this suit.

The '133, '715 and '456 patents suffer from similar defects.  At a high level, none of these three patents do anything more than claim variations on the basic concept of tracking the status of an activity and then performing some action in response.  The '133 patent claims are directed to the ineligible abstract idea of keeping track of events and saving your place with a bookmark if you are interrupted.  The '715 patent claims are directed to the ineligible abstract idea of concluding a process and ending communication in an orderly manner.  And the '456 patent claims are directed to the ineligible abstract idea of providing a certain quality of service by controlling access to resources hierarchically.  All of the claims are directed to human

---

[1] Sound View asserted U.S. Patent Nos. 5,806,062 (the "'062 patent"), 6,502,133 (the "'133 patent"), 6,708,213 (the "'213 patent"), 6,725,456 (the "'456 patent") and 7,426,715 (the "'715 patent").  (D.I. 1, Exs. A-E.)

[2] Defendants also believe the fifth patent, the '213 patent, to be invalid, but the record may need additional development before bringing it to the Court.

problems that exist without computers.  There is no improvement to the computer itself in any of the patents.  Indeed, none of the claims require anything more than generic and conventional electronic components.    The asserted claims of all three patents therefore fail to recite patent-eligible subject matter, consistent with scores of similar claims held invalid by the Federal Circuit and this district.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Sound View filed this case on April 9, 2019, alleging patent infringement.  (D.I. 1, Exs. A-E.)[3]  The Court granted the parties' stipulation to extend Defendants' time to respond to the Complaint to June 17, 2019.  (D.I. 8.)  With this Motion, Defendants move to partially dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## III.    SUMMARY OF THE ARGUMENT

1.       Count One of the Complaint should be dismissed because Sound View is collaterally estopped from asserting infringement of the asserted claim of the '062 patent.  That claim was found invalid for claiming patent-ineligible subject matter on summary judgment by the Central District of California District Court.

2.       Counts Two, Three and Five of the Complaint should be dismissed because the asserted claims of the '715, '133 and '456 patents are directed to patent ineligible abstract ideas.  The asserted claims also fail to claim an inventive concept, reciting nothing more than wholly generic and conventional components to implement the abstract idea.  The claims fail to recite any concrete, inventive technology that amounts to significantly more than the abstract idea

---

[3] The '133, '062, and '213 patents are also asserted in the consolidated cases related to *Sound View Innovations, LLC v. AMC Networks, Inc., et al.* (Case Nos. 1:19-cv-00145, -00146, -00147, -00193 and -00194).  The '133, '456, '715 and '062 patents are also asserted in *Sound View Innovations, LLC v. Delta Air Lines, Inc.* (Case No. 1:19-cv-00659).  The same patents, plus the '371, are asserted in *Sound View Innovations LLC v. Cigna Corporation, et al.* (Case No. 1:19-cv-00964).

itself. The claims are therefore invalid for lack of patent-eligible subject matter under § 101 and *Alice*.

## IV.   STATEMENT OF FACTS

Sound View's Complaint asserts, *inter alia*, that Defendants infringe claim 14 of the '062 patent, claim 13 of the '133 patent,[4] claim 13 of the '456 patent and claim 19 of the '715 patent. (D.I. 1, ¶¶ 85, 98, 113, 158.)

Plaintiff has brought numerous lawsuits involving the '062 patent, including a suit against Hulu, LLC in the Central District of California. *Sound View Innovations, LLC v. Hulu, LLC*, Case No. 2-17-cv-04146 (C.D. Cal.) ("Hulu action"). Following claim construction, Hulu moved for summary judgment of invalidity under 35 U.S.C. §101. The Court granted Hulu's motion.

## V.   ARGUMENT

### A.   Sound View is Collaterally Estopped from Asserting Claim 14 of the '062 Patent

Sound View is collaterally estopped from arguing that Defendants infringe claim 14 of the '062 patent because that claim has been held invalid. (SJ Order.) It is well-established that when a patent has previously been declared invalid, an unrelated defendant in a subsequent action for infringement may assert a collateral estoppel defense based on the previous judgment. *Blonder-Tongue Labs, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 321 (1971).

Collateral estoppel, also known as "issue preclusion," precludes a party from relitigating an issue that was previously decided. *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844

---

[4] Claims 1, 9-13 and 21 of the '133 Patent are currently the subject of instituted *inter partes* review proceedings. *Hulu, LLC v. Sound View Innovations, LLC*, Case No. IPR2019-00582. A final written decision is expected by August 2019.

(3d Cir. 1974).   In the Third Circuit[5], issue preclusion applies where "(i) the identical issue was previously adjudicated; (ii) the issue was actually litigated; (iii) the previous determination was necessary to the decision; and (iv) the party being precluded from relitigating the issue was fully represented." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citations omitted).   The Third Circuit also considers whether the issue was determined by a final and valid judgment. *Id.*

Issue preclusion precludes Sound View's assertion of the '062 patent here.   First, the issue is identical: whether claim 14 of the '062 patent is directed to patent-ineligible subject matter.   (*See* Ex. A, SJ Order.)   Second, it was actually litigated.   The issue was briefed on summary judgment following claim construction, oral argument was heard[6], and the court issued a thirteen-page, single spaced opinion thoroughly analyzing the ineligibility of asserted claim 14. Third, the determination that claim 14 of the '062 patent was ineligible was necessary to the decision as it was a central issue in the Court's judgment of invalidity and litigated extensively over the course of the Hulu action.[7]   *Jean Alexander*, 458 F.3d at 250 (issue is necessary to decision where it was the focus of the parties pleadings and litigated extensively).   Fourth, the party being precluded, Sound View, was fully represented because it was the plaintiff in the Hulu action and was even represented by several of the same counsel that represent Sound View here.

Finally, the summary judgment order is a final and valid judgment.   "Finality for purposes of issue preclusion is a more pliant concept than it would be true in other contexts and that finality may mean little more than that the litigation of a particular issue has reached such a

---

[5] Third Circuit law governs whether issue preclusion applies. *Soverain Software LLC v. Victoria's Secret Dir. Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

[6] Ex. B, Hulu action*,* D.I. 446.   Oral argument was also heard on Hulu's motion to dismiss the '062 patent.   Ex. C, Hulu action, D.I. 50.

[7] Hulu had moved for summary judgment of invalidity and non-infringement, but the Court did not need to address infringement after finding the patent invalid.

stage that a court sees no really good reason for permitting it to be litigated again." *Free Speech Coalition v. Att'y Gen.*, 677 F.3d 519, 541 (3d Cir. 2012) (quoting *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3rd Cir. 1980) (internal quotations omitted)).   To determine whether a prior ruling was sufficiently firm for preclusion courts consider whether: (1) the parties were fully heard; (2) a reasoned opinion was filed; and (3) that decision could have been, or actually was, appealed. *Free Speech Coalition,* 677 F.3d at 541.

As discussed above, Sound View was fully heard, and the Hulu Court issued a lengthy, reasoned opinion regarding the ineligibility of claim 14 of the '062 patent.   Although Sound View has not yet appealed the SJ Order, the ineligibility of claim 14 "has reached such a stage that [there is] no really good reason for permitting it to be litigated again." *Dyndul*, 620 F.2d at 412, n.8.   Indeed, the Federal Circuit held in nearly identical circumstances that collateral estoppel applied to a district court's Section 101 invalidity determination even though that decision had not yet been appealed.  *Intellectual Ventures I, LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1337-38 (Fed. Cir. 2017) ("*IV-Capital One II*"); *see also CardioNet, LLC v. ScottCare Corp.,* 325 F. Supp. 3d 607, 610-612 (E.D. Pa. 2018) (applying Third Circuit law, issue preclusion applied to another district court's Rule 12(c) finding that patents were invalid under 101 even though that decision was not yet appealable).   As such, collateral estoppel equally applies here.

**B.     The '133, '715 and '456 Patents Are Directed to Patent Ineligible Subject Matter**

**1.     Legal Standards**

**a.     Patent Eligibility is Determined Using the *Alice* Two-Step Test**

In *Alice*, the Supreme Court reiterated the two-step test for determining eligibility under § 101. *Alice*, 134 S. Ct. at 2355.   In the first step, the court determines whether the claims "are

directed to a patent-ineligible concept," such as an abstract idea. *Id.* The first step looks more holistically at the claims' overall "focus" and "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotations and citations omitted).

If the claims are directed to an abstract idea, at the second step the court "must look to the elements of the claim both individually and as an ordered combination" to determine whether there is an "'inventive concept'—*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Personalized Media Commc'ns v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 329 (D. Del. 2015) (quoting *Alice*, 134 S. Ct. at 2355). To survive step two, a claim must include "additional features" ensuring that the claim does "more than simply stat[e] the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (internal quotations, citation, and brackets omitted). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). The inventive concept must provide "significantly more" than the abstract idea itself. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1289-90 (Fed. Cir. 2018). Elements that are "well-understood, routine, conventional," or "purely functional" cannot confer patent-eligibility. *Alice*, 134 S. Ct. at 2359-60 (citation omitted); *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 611-12 (Fed. Cir. 2016).

### b.    The Court Can and Should Address § 101 on a Motion to Dismiss Without Claim Construction.

"Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss." *IPA Techs. v. Amazon.com, Inc.*, 307 F. Supp. 3d 356, 362 (D. Del 2018) (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015)). Early resolution of the § 101 issue can "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v.*

*AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, C., concurring).  This district has often invalidated patents for lack of patentable subject matter at the motion to dismiss stage. *See, e.g.*, *Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655 (D. Del. 2016).

Moreover, courts have often invalidated claims under Section 101 without claim construction. *See, e.g., RecogniCorp*, 855 F.3d at 1325*; Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014).  Here, no plausible claim construction could save the claims. The claims of the '133, '715 and '456 patents do not contain any concrete technological invention and claim construction would not change the "basic character of the claimed subject matter."  Content Extraction, 776 F.3d at 1349 (affirming grant of Rule 12(b)(6) motion to dismiss where, "even when construed in a manner most favorable to [plaintiff], none of [the] claims amount to 'significantly more' than the abstract idea").

### 2. The '133 Patent Claims Ineligible Subject Matter

#### a. The '133 Patent is Directed to the Abstract Idea of Keeping Track of Events and Saving Your Place with a Bookmark

The claims of the '133 patent are directed to the abstract idea of keeping track of events and saving your place with a bookmark if you are interrupted.  Claim 13 (which, as discussed below, is representative and the only claim identified by Sound View in the Complaint) is directed to a simple, two-step abstract idea: (1) processing events and (2) storing information to save your place (emphasis added):

> 13. A method of processing events generated by at least one system application, the method comprising the steps of:
>
> *processing* the events in at least one real-time analysis engine; and
>
> *storing* in a main-memory database system associated with the real-time analysis engine recovery information regarding a recovery point for the real-time analysis engine.

The claims solve a human problem in human way. Consider, for example, a wedding planner tracking RSVPs for a wedding.  The wedding planner receives RSVPs in the mail each day (the "events") and promptly reviews and records them in a log book as they come in ("process[es]" the RSVPs in a "real time analysis engine").  If the wedding planner is interrupted while processing the RSVPs, he places a bookmark in the log book ("recovery information regarding a recovery point"), so he can continue processing RSVPs without losing his place.

The claims of the '133 patent fall into the same category of patent-ineligible claims that use generic computing environments to process and store data.  As the Federal Circuit found in *In re TLI*, the idea of "classifying" (or processing) and storing data "in an organized manner" is not patent-eligible.  *In re TLI*, 823 F.3d at 613 (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1347, 1367 (Fed. Cir. 2015) ("*IV-Capital One I*").  Neither is the idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory," because "data collection, recognition, and storage is undisputedly well-known" and "humans have always performed these functions."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345, 1347 (Fed. Cir. 2014).

The claims of the '133 patent are similar to the claims found abstract in *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015).  In *Internet Patents*, the Federal Circuit found invalid claims that were directed to the abstract idea of "retaining information in the navigation of online forms."  *Id.* at 1348.  Similar to the "recovery information regarding a recovery point" claimed in the '133 patent, the Court in *Internet Patents* found that the concept of "maintaining state" to avoid "losing data previously entered" did not take the claims outside the realm of the abstract.  *Id.* at 1345.  Like the patent invalidated in *Internet Patents*, the claimed

"recovery information regarding a recovery point" limitation in the '133 patent contains "no restriction on how the result is accomplished." *Id.* at 1348.  Sound View's '133 patent merely claims the abstract concept of "avoiding loss of data." *Id.*

Moreover, the claims of the '133 patent do not improve computer technology as they use generic, well-known computer terminology.  Indeed, in the '133 patent, an "event" is generally "any type of transaction involving contents of a database system." ('133 Patent, 3:46-49.)  In a prior filing in this Court, Sound View said that the "real time analysis engine" is merely a fast computer for handling events: "a portion of a high-throughput computer system that aggregates or processes computer events nearly instantaneously."  (Ex. D, Opp'n to Twitter's Motion to Dismiss, *Sound View Innovations, LLC v. Twitter, Inc.*, Case No. 1:16-cv-00652-SLR, D.I. 15 at 13-14).  But merely accelerating the abstract concept with a computer does not make it "any less abstract."  *IV-Capital One I*, 792 F.3d at 1367, 1370 ("merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea").

Furthermore, nothing in the claims meaningfully describes *how* the events are processed (such as through specific computer programming), *how* the recovery information is determined or *how* the recovery information is stored.  *Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*, 874 F.3d 1329, 1337-39 (Fed. Cir. 2017) (holding claims abstract because they "[did] not sufficiently describe *how* to achieve these results in a non-abstract way") (emphasis added) (internal citation omitted).  Indeed, the claims here do little more than identify desired functional results of processing and storing events, and then say "do it on a computer."  *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016).

The remaining claims of the '133 patent do not change the nature of the abstract idea reflected in representative claim 13. *See Content Extraction*, 776 F.3d at 1348. Claim 13 is representative because independent claims 1 and 21 recite the same basic limitations and are directed to the same abstract idea. Dependent claims 2-7, 14-17, and 19-20 merely recite assigning and storing "serial tags," which are described in the specification as serial numbers (*e.g.*, '133 Patent, 28:8-15). Dependent claims 8 and 18 add the trivial limitation of using the serial tags to select a recovery point. Finally, dependent claims 9 and 10 specify that the events are received in a data stream and outputted as a stream into a data sink (a database). *See, e.g., Alice*, 134 S. Ct. at 2360 (recitation of a "data storage unit" failed to confer patent-eligibility). None of the claimed features, individually or collectively, changes the overall "focus" of the claimed abstract idea.

**b.      Nothing in the Claims of the '133 Adds An Inventive Concept**

Here, the claims of the '133 patent do not recite any inventive concept, but instead merely recite performing the abstract idea on two well-known, generic, computer components: a "real-time analysis engine" and a "main-memory database system." Each of these simple hardware elements merely constitute a "[w]holly generic computer implementation" that cannot confer patent-eligibility. *Alice*, 134 S. Ct. at 2358, 2360 (holding that claim elements such as "data processing system," "communications controller," and "data storage unit" were "purely functional and generic" and failed to provide an inventive concept); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (invalidating claims reciting only "generic computer components such as 'interface,' 'network,' and 'database'"). Moreover, as discussed above, nothing in the claims of the '133 patent explain *how* those generic pieces of hardware are actually used to perform the claimed methods and systems, instead relying on the open-ended, aspirational goal that using some unspecified technical details, events are processed

and recovery information is stored.  *Affinity Labs of Texas, LLC v. DIRECTTV, LLC*, 838 F.3d 1253, 1269 (Fed. Cir. 2016); *Two-Way Media*, 874 F.3d at 1339.

Even considering each claim as an "ordered combination" of elements does not transform the idea into a concrete, patent-eligible invention.  *Alice*, 134 S. Ct. at 2359-60.  These two step claims recite their generic information-moving functions in the same conventional, common-sense order that humans do in everyday life:  process information and keep track of your place in case you are interrupted.  The claims here add nothing inventive since, "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept."  *IV-Capital One II*, 850 F.3d at 1342; *BSG Tech.*, 899 F.3d at 1290-91.  The '133 patent is therefore invalid under Section 101.

### 3.      The '715 Patent Claims Ineligible Subject Matter

#### a.      The '715 Patent is Directed to the Abstract Idea of Concluding a Process and Ending Communication in an Orderly Manner

The claims of the '715 patent are directed to the abstract idea of concluding a process and ending communication in an orderly manner, much like when a wedding is over and the wedding party and guests leave the ceremony location.  For example, representative claim 19 (the only asserted claim in the Complaint) is directed to a generalized method of obtaining dependency relationships among software components, establishing an ordered sequence to shut down the software components, and closing any communication channels between the software components.

19. A method, comprising the steps of:

obtaining one or more dependency relationships among a plurality of software components that run within one or more executables of a distributed software application;

establishing an ordered sequence for shutdown of the pluraiity of software components based on one or more of the one or more dependency relationships; and

shutting down the plurality of software components according to the ordered sequence;

tearing down any communication channels between the plurality of software components upon deactivation of each of the plurality of software components.

The claims are analogous to the recessional order ("obtaining one or more dependency relationships") of the wedding party and guests ("a plurality of software components") at the conclusion of the ceremony ("one or more executables") at a traditional wedding ("distributed software application").



A traditional wedding recessional[8] requires that the wedding party exits first, followed by the maid of honor and best man, then followed by the bridesmaids and groomsmen, followed by the parents and then grandparents, and finally the wedding guests by rows from front to back

___

[8] Ex. E, "How to Order the Bridal Recession" (available at:
https://www.dummies.com/relationships/weddings/how-to-order-the-bridal-recession/)

("establishing an ordered sequence for shutdown of the plurality of software components based on one or more of the one or more of the dependency relationships").  The wedding party and guests exit in that traditional order ("shutting down the plurality of software components according to the ordered sequence").  After the conclusion of the ceremony, the wedding party and guests are talking to one another, but as they recede in the traditional order they say goodbye as they leave the ceremony location ("tearing down any communication channels between the plurality of software components upon deactivation of each of the plurality of software components.")

The clear "focus" of the claims—the essential "most important aspect"—is shutting down a process in an orderly manner.  *See, e.g.*, *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed Cir. 2017); *Internet Patents*, 790 F.3d at 1348.  That the claims now purport to automate this abstract (and traditionally manual) concept in a series of functional computerized steps does not make it "any less abstract."  *IV-Capital One II*, 850 F.3d at 1340; *IV-Capital One I*, 792 F.3d at 1370.

The abstract idea of the '715 patent is most similar to the claims invalidated in *Accenture Global Services, GMBH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013).  In *Accenture*, the Federal Circuit held that the claims were directed to the abstract idea of "generating tasks [based on] rules…to be completed upon the occurrence of an event." *Id.* at 1344.  The Federal Circuit found that even though the claims were "appl[ied] in a computer environment and within the insurance industry," that did not transform the claims into a patent eligible invention.  *Id.* at 1344-45.  Similarly here, the claims of the '715 patent are merely generating tasks (shutting down software components and tearing down communication channels

in an orderly manner) based on rules (dependency relationships) to be completed upon the occurrence of an event.

Moreover, nothing in the claims meaningfully specifies *how* the dependency relationships between software components are obtained (or determined) or how the ordered sequence for shutdown is determined (such as through specific computer programming). *Two-Way Media,* 874 F.3d at 1338-39. As in the other patents challenged in this motion, the claims are devoid of details on "*how* to engineer or program" the underlying components and recite only "result-based" functional aspirations. *Interval Licensing v. AOL, Inc.*, 896 F.3d 1335, 1343-45 (Fed. Cir. 2018) (emphasis in original).

The two other independent claims of the '715 patent do not change the nature of the abstract idea reflected in representative claim 19. *See Content Extraction*, 776 F.3d at 1348. Claim 19 is representative because independent claims 1 and 15 recite the same basic limitations and are directed to the same abstract idea, adding only a generic "manager component." Dependent claims 2-14, 16-18 and 20 merely recite various software components that are shut down in varying orders. None of the claimed features, individually or collectively, changes the overall "focus" of the claimed abstract idea.

**b.      Nothing in the Claims of the '715 Adds An Inventive Concept**

The claims of the '715 patent do not recite any inventive concept, but rather recite the performance of the abstract idea using generic "software components," "executables", "distributed software application[s]" and "communication channels." (*e.g.*, '715 patent, claim 19.) As with the other challenged patents, the '715 patent claims fail to state *how* the claimed methods and systems are achieved, instead essentially state only an open-ended, aspirational functional goal that, somehow, through some unspecified underlying technical details, software

components are shut down in an ordered sequence and communication channels are torn down. *Affinity Labs*, 838 F.3d at 1269; *Two-Way Media*, 874 F.3d at 1339.

Again, considering the claims of the '715 patent as an ordered combination does not transform the idea into a concrete, patent-eligible invention. *Alice*, 134 S. Ct. at 2359-60. The recitation of a process to shutdown generic software components follows the same conventional, common-sense order that a human would to perform the same task: shut down the software components in an orderly manner and tear down the communication channels after the software components are shut down. The '715 patent cannot be valid under Section 101.

### 4.     The '456 Patent Claims Ineligible Subject Matter

#### a.     The '456 Patent is Directed to the Abstract Idea of Providing a Quality of Service by Controlling Access to Resources Hierarchically

The claims of the '456 patent are directed to the abstract idea of providing a certain quality of service by controlling access to resources hierarchically. For example, asserted claim 13 (which, as discussed below, is representative and the only claim identified by Sound View in the Complaint) recites a generalized method of controlling access to resources: establish a "quality of service guarantee" and "providing a particular quality of service in accordance with the quality of service guarantee," and do that by controlling access to resources by organizing resource reservations "in a hierarchy."

The abstract nature of the claim can be analogized to teams of astronomers sharing access to a telescope at an observatory. Each of the astronomy teams studies specific galaxies each night: Andromeda, Comet, Pinwheel and Sunflower. The Andromeda team is currently focused on studying two specific stars: Kappa Andromedae and Pi Andromedae. The telescope can only be directed to one portion of the sky at a time, requiring that access to the telescope be split up among the astronomy teams.

15

| Claim Language | Abstract Idea |
|---|---|
| 13. A method of ensuring a particular quality of service for an application in a computer system, the method comprising the steps of: | A university ("computer system") has an observatory ("application") with one high-powered telescope that is shared by teams of astronomers.  Because of the demand to use the telescope, the observatory has rules that ensure that each team of astronomers has access to the telescope for specific amounts of time each night so they can study their respective galaxies ("method of ensuring a particular quality of                                              service"). |
| utilizing an application programming interface of an operating system to establish one or more quality of service guarantees that correspond to a reference to an object; and | The observatory manager ("an application programming interface of an operating system") sets rules governing ("to establish one or more quality of service guarantees") use of the telescope ("that correspond to a reference to an object"). |
| providing a particular quality of service to a request in accordance with the one or more quality of service guarantees that correspond to one or more object references used in the request; | When an astronomy team requests ("a request") use of the telescope ("one or more object references used in the request"), the use of the telescope is divided among the astronomy teams to ensure that they have sufficient time accessing the telescope for each of the galaxies they study ("providing a particular quality of service to a request in accordance with the one or more quality of service guarantees"). |
| wherein the quality of service guarantees comprise resource reservations, each specifying a portion of a resource set aside for exclusive use by one or more processes; | Each astronomy team is guaranteed the telescope for specific portions of the night to ensure they have specific study times ("the quality of service guarantees comprise resource reservations"), where each astronomy team ("one or more processes") has exclusive access to the telescope ("each specifying a portion of a resource set aside for exclusive use by one or more processes"). |
| wherein the resource reservations are organized hierarchically such that each resource reservation r may have at most one parent and one or more siblings and children, and associated with r is a weight that specifies how r shares the resources of r's parent with r's siblings; and | Each astronomy team's access to the telescope is weighted based on the following allotted percentages of time ("associated with r is a weight that specifies how r shares the resources of r's parent with r's siblings").  The Andromeda team further divides their access to study specific stars:<br><br>• Comet Galaxy Team – 30%,<br>• Andromeda Galaxy Team – 20%<br>  ○ Kappa Andromedae Star – 10%<br>  ○ Pi Andromedae Star – 10%<br>• Pinwheel Galaxy Team – 20%<br>• Sunflower Galaxy Team - 20% |

| Claim Language | Abstract Idea |
|---|---|
| | The resulting hierarchy of telescope access is shown below ("wherein the resource reservations are organized hierarchically"):<br><br> |
| wherein associated with each resource reservation r is a minimum amount of resources that r receives from its parent p, such that the minimum amount of resources associated with p is at least equal to the sum of the minimum amount of resources associated with each of p's children. | Each astronomy team is guaranteed a minimum amount of time each night ("associated with each resource reservation r is a minimum amount of resources that r receives from its parent p").  The telescope can be used the entire night (1).  In the example above, the guaranteed minimums for all teams each night adds up to 90% (0.9) of the night ("such that the minimum amount of resources associated with p is at least equal to the sum of the minimum amount of resources associated with each of p's children.") |

Resource allocation (*i.e.,* dividing up a limited resource) is itself an abstract idea – and something that human beings naturally do every day.  In fact, on numerous occasions the Federal Circuit has invalidated claims directed to controls on access to resources or data.  *See, e.g.*, *Smartflash LLC v. Apple Inc.*, 680 Fed. App'x. 977, 982 (Fed. Cir. 2017) (finding claims that "recite methods and systems for controlling access to content data" directed to an abstract idea); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 Fed. Appx. 1017 (Fed. Cir. 2017) (claims directed at "providing restricted access to resources" were abstract).

The Federal Circuit's recent *ChargePoint* decision is particularly instructive. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019). In *ChargePoint*, the Federal Circuit found claims directed to modifying the amount of resources allocated (in that case, electricity flow) "based on demand response principles does nothing to make [the] claim directed to something other than the abstract idea." *Id.* at 771. It found that "[d]emand response is itself an abstract concept-a familiar business choice to alter terms of dealing to help match supply and demand." *Id.* at 771. Similarly, here the claims of the '456 patent are merely allocating the amount of computing resources available to a particular computing process based on the supply of computing resources that were allocated for that process. Further applying a rule to ensure quality is equally abstract. *See Accenture Glob. Servs., GMBH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) ("generating tasks [based on] rules ... to be completed upon the occurrence of an event" is an abstract idea).

Moreover, nothing in the claims meaningfully specifies *how* the quality of service guarantees are established or *how* the particular quality of service is provided (such as through specific computer programming). *Two-Way Media,* 874 F.3d at 1338-39. As in the other patents challenged in this motion, the claims are devoid of details on "*how* to engineer or program" the underlying components and recite only "result-based" functional aspirations. *Interval Licensing v. AOL, Inc.*, 896 F.3d 1335, 1343-45 (Fed Cir. 2018) (italics in original). The claims are merely directed to desired functional results and say "do it on a computer." *Ameranth*, 842 F.3d at 1243.

The claims of the '456 patent do not provide any specific improvement to computers or any other technology, such as a new kind of operating system or any improvements to servers or operating systems. *In re TLI*, 823 F.3d at 611. Instead, the claims just claim using a generic

18

"application programming interface of an operating system" to establish the quality of service guarantees and then provide those quality of service guarantees. (*e.g.*, '456 Patent, claim 13).

Claim 13 is representative because the other independent claims (1, 14, 15, 16, 17, 22, and 23) are all directed to the same abstract idea of providing a quality of service by controlling access to resources hierarchically. *See Content Extraction*, 776 F.3d at 1348. The dependent claims add nothing of patentable significance, adding minor variations such as (1) generic computer components used with the abstract idea (claims 2-6 and 9), (2) limiting access in proportional amounts (claims 7-8), (3) running a counter (claims 10-11), (4) generically using "garbage collection" to reclaim unneeded resources (claim 12), and (5) setting additional resource reservations (claims 18-19).

### b.     Nothing in the Claims of the '456 Adds An Inventive Concept

The claims of the '456 patent similarly lack any inventive concept that would transform the claims into something more than the abstract idea. The claims recite generic computer components such as "application programming interface[s]," "an operating system" and "objects." These generic computer components do not confer patent eligibility. *Alice*, 134 S. Ct. at 2360. Moreover, nothing in the claims of the '456 patent describes how the claimed methods and systems are achieved, instead essentially state only an open-ended, aspirational functional goal that, somehow, through some unspecified underlying technical details, resources are allocated in accordance with quality of service guarantees. *Affinity Labs*, 838 F.3d at 1269; *Two-Way Media*, 874 F.3d at 1339. While the claims of the '456 patent are "lengthy and numerous," they are not patentable because they recite the claimed "functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Elec. Power*, 830 F.3d at 1351.

Likewise, considering the claims of the '456 patent as an ordered combination does not transform the idea into a concrete, patent-eligible invention. *Alice*, 134 S. Ct. at 2359-60. The claims recite their generic information-moving functions in the same conventional, common-sense order that humans do in everyday life: decide what quality level you want, then set limits on access to resources and then apply those limits in an orderly manner with a hierarchy. Accordingly, the claims of the '456 patent are invalid under Section 101.

### 5. Plaintiff's Complaint Does Not Confer Patent-Eligibility

Finally, nothing in Plaintiff's Complaint creates any factual issue sufficient to avoid dismissal with prejudice under § 101. The Complaint posits conclusory statements that the inventions "solved [a] discrete computer based-problem" and "improved upon existing [systems]" and the like. (D.I. 1, ¶¶ 37.) But a plaintiff "cannot render its complaint immune from dismissal by merely asserting that its methods are 'novel' and 'improve the technology used in electronic communications.'" *Glasswall Sols. Ltd. v. Clearswift Ltd.*, No. 2018-1407, 2018 WL 6720014, at *2 (Fed. Cir. Dec. 20, 2018) (affirming Rule 12(b)(6) dismissal under § 101). These "alleged 'factual' assertions . . . are not factual in nature, but conclusory legal assertions which the district court [is] 'not bound to accept as true.'" *Id.* at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This Court should not "accept as true bald assertions, unsupported conclusions and unwarranted inferences . . ." *Search & Social Media Partners v. Facebook, Inc.*, 346 F. Supp. 3d 626, 630-31 (D. Del. 2018) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)) (internal quotations omitted).

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Counts One, Two, Three and Five of the Complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

OF COUNSEL:

Michael Rhodes
Heidi L. Keefe
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Phillip E. Morton
Emily E. Terrell
COOLEY LLP
1299 Pennsylvania Ave. NW, #700
Washington, D.C. 20004-2446
(202) 842-7800

June 17, 2019

Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jlyons@mnat.com

*Attorneys for Defendants Walmart Inc.
and Vudu, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 17, 2019, upon the following in the manner indicated:

John C. Phillips, Jr., Esquire                               *VIA ELECTRONIC MAIL*
Megan C. Haney, Esquire
PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806-4204
*Attorneys for Plaintiff*

Alan S. Kellman, Esquire                                     *VIA ELECTRONIC MAIL*
Richard M. Cowell, Esquire
Edward Geist, Esquire
Kathryn Bi, Esquire
Carson Olsheski, Esquire
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
*Attorneys for Plaintiff*

/s/ Karen Jacobs

_____

Karen Jacobs (#2881)